Good morning. Beth and Alan, on behalf of the appellants, Scott Ferrell, Michael Campos, Thomas Hess, and Sarah Jordan. The issue involved in this appeal is a limited one. It is whether a pre-litigation demand notice sent pursuant to California statute is protected by the communications protected by the Nevada anti-slap statute. Excuse me. Judge Mayhem in the district court denied plaintiff's motion to strike based on the holding in John B. Douglas. The judge in the district court determined that the communication at issue must be directed towards a governmental entity in order to be But what makes us think we have jurisdiction over this? As we put in our papers, Your Honor, we put that the collateral order doctrine applies in this case. Did you seek a 1292 certification from the district court? We did not, Your Honor. We did not. You're relying strictly on Cohen v. Beneficial. Yes, Your Honor. And arguing that under the three prongs of the collateral order doctrine, that it does fall within the doctrine. The first prong is uncontested, that it is conclusively determined at the district court level. Obviously, the district court did issue an order on the motion. The second prong being whether it resolved an important issue completely separate from the merits. The issue in the slap motion was only whether this letter is within the protections of the slap statute. So it does – it is a completely separate issue from the extortion and racketeering claims that were in the underlying case. The third prong is whether it's effectively unrevealable on appeal from final judgment. The purpose of the anti-slap statute is to avoid the costs of trial and to save the Court and the parties time. Well, that's pretty clear in the California statute in which you are immune from trial, but the Nevada statute says you're immune from liability, which makes it an affirmative defense, it's waivable, and it doesn't make you immune from trial. It makes you immune from damages. Yes, Your Honor, but the Nevada legislator, in enacting the statute, specifically put in the preamble towards the statute that it was in an effort to save litigation time, to save litigation costs. So in the purpose behind the statute itself, it is anticipating saving all of the aspects of litigation. Now, if the legislature says something about allowing an interlocutory appeal or an immediate appeal or something, is there anything in the statute you could point to, to let us believe that this is supposed to be the equivalent of qualified immunity, that is, again, immunity from suit? Well, the statute does specifically contemplate an appeal. It stays all discovery pending the resolution of an appeal. Right. But that could be under, for example, I don't know whether Nevada has the equivalent of a 1292, but if in the Federal courts, you would have had a 12 – you might have had a 1292 remedy, which you didn't seek, and that provision would still be valid under that statute. It would, Your Honor, but the fact that they include it in there shows, and because of the language of the preamble itself, it shows that they are contemplating a visit. That's a pretty deep inference that we have to draw from a discovery provision, isn't it? Well, it is a deep inference, Your Honor, but I think the two portions of the statute and the preamble combined show that the legislature did. But the statute also says it's to be treated as a matter for summary judgment. And we don't – we generally don't review denials of summary judgment on collateral review. However, under certain circumstances, they are reviewable under collateral – under the collateral. If it's – if it's – that third prong is if it's unreviewable. Tell us why this is unreviewable at the end of the case. Well, for two reasons. Like I said, the purpose of the statute is to avoid the litigation costs. The second would be, as this Court stated in the Batzel decision, the rights at issue under the anti-SLAP statute are similar to the rights at issue under an immunity provision. And so because – And that was California, of course. And California has a very different provision. It says it is – it does provide you immunity from suit. It does, Your Honor, but the rights – When this is immunity from liability, that is, immunity from damages, why, if you – if you're – if we awarded – if damages were awarded in your case, wouldn't it be reviewable? Because it would defeat the purpose of the statute of making the case go through a final judgment and years of litigation that may require – it not only defeats the purpose of the statute, but it defeats the conduct that is at issue for the statute. I mean, it's the same type of conduct that is at issue under the immunity, which is, you know, protecting people from their – their freedom of speech and absolute privileges, like the litigation privilege. For which – for which you would have a remedy if the – your SLAP defense were good, that you would not have to pay any damages. True, but – but we would have to go through the extensive litigation to get to that point, and the purpose of the SLAP statute is to cut it off at the – at the beginning to show that that is not a suitable basis for their claims. Well, counsel, why – why is the Nevada statute more like the California statute in that regard than the Oregon statute that in Engle – Englert was held not to be held not to? The Englert decision specifically talked about how there's nothing in the Oregon statute or any of the legislative history behind the Oregon statute to show that the legislature in any way contemplated that they are trying to avoid the right to trial or trying to avoid the litigation costs that – that are at issue. And specifically, it talks about the litigation costs when it talks about the California case, and that the California case had looked at how much it was going to require the defendants to – to go through with the litigation based on this protected activity. And like I said earlier, the preamble to the Nevada statute specifically states that it's an effort to avoid the litigation costs. And moreover, when they're talking about the – the cases or the – the citizens of Nevada are going before the legislature to talk about why the statute should have been enacted, they're giving these same types of examples of – of cases where people are being sued for libel and slander for things that are just protections of their free speech and of that nature. So because the legislature specifically contemplated avoidance of the costs of litigation and avoidance of trial, that is an issue that distinguishes it from the Oregon statute. Sotomayor, how do you respond to the argument that in John, while admittedly the John case does not address the precise question we have here, they nonetheless in discussing the derivation of the Nevada Act indicate that it's essentially similar to the Federal Murr-Hennington doctrine. And those Federal courts, circuits, I think unanimously, I may be in error there, but at least a majority of the ones I've read, all of the ones I've read, indicate that the Murr-Hennington doctrine does not create a right to an immediate appeal under the collateral order doctrine. Your Honor, I would again argue that the – the issues involved in this case are not in this – in this – or protected by the statute are similar to the immunity privileges, and for that reason, because they parallel the conduct that is protected by the immunity privileges, they should parallel the Supreme Court precedent that provides that these orders should be immediately appealable. So what precedent in the Supreme Court? The cases are Nixon v. Fitzgerald, which states that an absolute immunity is immediate. That's – that's – that's qualified immunity under – under Bivens' action, right? I believe it was absolute immunity for President Nixon, Your Honor. Okay. Right. But it's similar to the qualified immunity, which is immunity from suit, which is a very different form of immunity. That's got – that's got a constitutional basis to it. It is, Your Honor, but it is still talking about the absolute and – absolute immunity and the qualified immunity under the Mitchell v. Forsythe case, which – which are talking about interfering with governmental action. And in this case, this letter is an attempt to comply with governmental prerequisites. So are you – are you arguing – are you arguing that there is a constitutional basis for the immunity? For the – I'm sorry, for the what? Are you arguing that there's a constitutional basis for the fact that – to make this reviewable? There was a constitutional basis in Nixon v. Fitzgerald for the – for the absolute immunity. There's a constitutional basis in both 1983 and Bivens' actions. That is true, Your Honor, and I think it involves a lot of the same types of – of protections. The anti-SLAPP statutes involve a lot of First Amendment rights and the freedom to be able to use it. If that was – if that was true, then wouldn't Englert have come out the other way? Well, I think Englert primarily determined its decision based on the fact that the Oregon statute didn't contemplate the immediate right to trial, and I think that that is different than the Nevada. But the Oregon anti-SLAPP statute surely has a First Amendment component, just as the California and the Nevada statutes. It does, Your Honor, but I don't believe that they addressed that issue in the Englert decision. Let me just ask you. It seems like two important cases here are John and Englert. And I guess let me just have you discuss both of them. In John, the Nevada Supreme Court stated that Nevada and California's anti-SLAPP statutes are similar in purpose and language. And I guess, are they similar enough, or how similar would the two laws be if the purpose of California's law was to provide immunity from trial and the purpose of Nevada's law was not, or can you expound on that? Excuse me, Your Honor. Thank you. The John B. Douglas case, the third prong of 41.637 is seemingly – it's almost identical, I think, except for one word, to the California anti-SLAPP statute. So they are very identical, not only in language, but in purpose. And I think that the John B. Douglas decision is interesting because, as the district court held, the district court determined that the communication wasn't directed towards a governmental entity, so it couldn't apply to our case. However, the John B. Douglas decision only analyzed the statute under the second prong of the statute, which specifically encompasses only communications that are directed towards a governmental entity. So I think that the John B. Douglas decision, while it is the only decision analyzing the statute, it only analyzes that second prong. So the requirement that the district court held that it be directed towards a governmental entity only applies to any communications that are proffered under that second prong of the statute. And in Englert, how can Englert be distinguishable or distinguished from this case? Is the lack of the appeal provision dispositive? Well, as I said, I think because of the language in the statute itself, which contemplates immediate appeal, where it says discovery stayed pending resolution of an appeal, as well as the preamble to the statute itself and the legislative history to the statute, that does distinguish it from Englert in that it shows that legislature was contemplating that this is a statute that should stop the litigation at the get-go. And then the only other argument I would make, Your Honors, is regarding why the letter does fall within the third prong of the Nevada anti-slot statute. The third prong of the statute reads or addresses any communications made in direct connection with an issue under consideration by legislative, executive, or judicial body, or any other proceeding authorized by law. There's no requirement within that provision of the statute that it be directed towards a governmental entity. And in fact, that provision of the statute is fairly broad. There's that last clause of the statute that says, or any other official proceeding authorized by law. Counsel, could you also come within section 1 of that same section that you were attempting to procure? That is, that this was you filed this letter in contemplation of an action, and therefore you were going to be procuring governmental action, result, or outcome? Yes, Your Honor. And we did put that in our papers as well, that we do believe that because the letter was mandated by statute. It really looks like the only thing that it doesn't fit is number 2, which has to be a complaint to a legislature officer or employee of the government. That is correct, Your Honor. So I have nothing further unless Your Honors have any further questions. We thank you very much. A little unusual for you not to have opposition here, but it happens from time to time. So thank you very much, Ms. Allen. Thank you. Metabolic research, or Pharrell v. Metabolic Research is submitted.
judges: Bybee, Murguia, Cjj Singleton (Alaska), Dj